*In re* APPEAL OF GENERAL MOTORS CORPORATION.
CITY OF LIVONIA *v.* STATE TAX COMMISSION.

1. TAXATION—PROPERTY—UNIFORMITY.
   Assessment and taxation of real and tangible personal property is required to be uniform (Const 1908, art 10, § 3).

2. SAME—PROPERTY—EQUALIZATION—UNIFORMITY.
   Equalization procedures with respect to the taxation of property have the purpose of adjusting and correcting all different modes of assessment to achieve uniformity among governmental units within a county and uniformity among the counties of the State (Const 1908, art 10, § 3; CL 1948, § 211.1 *et seq.,* as amended).

3. SAME—PROPERTY—EQUAL TREATMENT—CASH VALUE.
   The principle of equal treatment in the matter of taxation of real and tangible personal property, is regarded as primary, regardless of cash value (Const 1908, art 10, §§ 3, 7; CL 1948, § 211.1 *et seq.,* as amended).

4. SAME—PROPERTY—ASSESSMENT.
   Unequal assessments must be reduced to the average level of assessment if a taxpayer is to have a remedy to effect uniformity of taxation of property (Const 1908, art 10, § 3; CL 1948, § 211.1 *et seq.,* as amended).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur, Taxation §§ 150, 156.
[2] 51 Am Jur, Taxation § 153.
[3] 51 Am Jur, Taxation §§ 150, 153, 156.
[4] 51 Am Jur, Taxation § 162.
[5] 51 Am Jur, Taxation § 163.
[6] 51 Am Jur, Taxation §§ 741, 744, 745, 790.
[7] 51 Am Jur, Taxation §§ 763, 764.
[8] 2 Am Jur 2d, Administrative Law §§ 376, 377.
[9] 51 Am Jur, Taxation §§ 763, 764.
[10] 51 Am Jur, Taxation § 162.
[11] 51 Am Jur, Taxation §§ 696, 697.
[12] 5 Am Jur 2d, Appeal and Error § 1009.

5. SAME—AVERAGE ASSESSMENT—PERSONAL PROPERTY.

State tax commission's assessment of a taxpayer's tangible personal property at State equalized value for personal property *held*, error, where there was available the weighted average of the State equalized values of both real and personal property as a standard of average assessment levels to determine matter of uniform treatment of the taxpayer (Const 1908, art 10, § 3; CL 1948, § 211.1 *et seq.*, as amended).

6. SAME—OVERASSESSMENT—TAXPAYER'S REMEDY.

The reduction of the personal property assessment of a single taxpayer to the average level for the taxing unit does not require the reassessment of the property for the entire taxing unit to achieve uniformity required by the Constitution, since so to require would render the taxpayer's remedy wholly inadequate, the taxpayer's right being the right to equal treatment (Const 1908, art 10, § 3; CL 1948, § 211.1 *et seq.*, as amended).

7. SAME—AVERAGE LEVEL OF ASSESSMENT—EVIDENCE.

The average level of assessment of all real and personal property within a taxing district may be proved by evidence of the work of the assessor, other proofs by either the taxing district or a taxpayer, or by the State tax commission through such independent examination as it may elect (Const 1908, art 10, § 3; CL 1948, § 211.1 *et seq.*, as amended).

8. ADMINISTRATIVE LAW—HEARING—ADMISSION OF EVIDENCE.

An administrative agency has a wide latitude in the matter of admission of evidence at a hearing before it (CLS 1961, § 24.105).

9. TAXATION—ASSESSMENT—EVIDENCE—EQUALIZATION STUDIES.

Equalization studies, including those of a prior year, though made primarily for the purpose of equalizing tax levels between governmental units, need not conform to a local assessor's findings and may be proper proof, if competent, and a foundation is laid in taxpayer's appeal to the State tax commission (CLS 1961, § 24.105; CL 1948, § 211.1 *et seq.*, as amended).

10. SAME—PROPERTY ASSESSMENT—STATE TAX COMMISSION.

The State tax commission may use a different mode of assessment of property than that used by a local assessor, especially where the assessor has not uniformly assessed all personal property in the taxing district (CL 1948, §§ 211.18, 211.148–211.152).

11. SAME—ASSESSMENT—STATEMENT OF PROPERTY OWNER—STATE TAX COMMISSION.

Property owner's statement to assessing officer is not controlling in the fixing of the valuation of a taxpayer's property, nor is

the action of the local assessing officer, or of the local board of review, where the jurisdiction of the State tax commission is invoked and it has acted in the premises (CL 1948, §§ 211.18, 211.148–211.152).

12. COSTS—PUBLIC QUESTION—ASSESSMENT FOR TAXES.
  No costs are allowed on appeal and cross appeal as to assessment of taxpayer's property, where a public question is involved.

Appeal from State Tax Commission. Submitted April 6, 1965. (Calendar No. 6, Docket No. 50,629.) Decided October 4, 1965.

In the Matter of the General Motors Corporation, taxpayer, on its appeal to the State Tax Commission, a reduction in assessment of personal property was granted. City of Livonia, a municipal corporation, plaintiff, appeals from decision of State Tax Commission, named as defendant. Taxpayer General Motors cross-appeals. Reversed to provide additional relief for taxpayer by assessment taking into account average assessment level of both real and personal property, and matter remanded for further determination accordingly.

*Harry M. Smit,* City Attorney, subsequently *Steve Polgar,* City Attorney, and *Milton I. Firestone,* Assistant City Attorney, for plaintiff City of Livonia.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendant State Tax Commission.

*Aloysius F. Power, Donald K. Barnes,* and *Thomas J. Hughes,* for cross-appealing taxpayer, General Motors Corporation.

*Amicus Curiae:*

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys (*Albert E. Champney,* of counsel), for County of Wayne.

*Levin, Levin, Garvett & Dill* (*Charles L. Levin,* of counsel), for Pavilion Apartments, Inc.

ADAMS, J.   This is an appeal and cross-appeal from the State tax commission's determination of General Motors' 1963 personal property assessment in Livonia.   The city assessor used the taxpayer's original book costs as a beginning point and assessed the property at $26,603,790.   He did so according to certain percentage rates or formulas recommended by Wayne county which he purportedly used as a uniform method to assess all personal property in the city.   The assessment was upheld by the board of review.   On appeal, the commission also used the taxpayer's figures but made a determination of $19,576,000.   The commission's action placed the assessment at the average assessment level for *personal* property in Livonia.

The commission found:

"1. A 1963 equalization study of *real* property in Livonia revealed the level of assessment to be at 73.64% of the State equalized level.   *   *   *

"3. The remainder of the assessment roll (*personal property*) was examined thoroughly for equalization in 1962.   The average level of assessment determined from the study was 90.26% of the State equalized level.

"4. The 1962 *personal property* study results were brought forward to 1963 routinely.   *   *   *   The routine computations resulted in reducing the rec-

ognized level of assessments  *  *  *  from 90.26%
to 83.70%.

"5. In view of the weight of the real property
assessment level which would have dictated an over-
all real and personal average level of assessment
at approximately 76%, the 83.70% level of assess-
ment routinely determined and based on the 1962
personal property study was used by the State
tax commission to determine the final assessment
for General Motors personal property in the city
of Livonia." (Emphasis supplied.)

1.

The main question presented is: Is the Michigan
State tax commission required by law to reduce an
intentionally unequal personal property assessment
to the level of assessment for all property—both real
and personal — taxable in the assessment district?

The Michigan Constitution of 1908, controlling.
here, provided:

"The legislature shall provide by law a uniform
rule of taxation, except on property paying specific
taxes, and taxes shall be levied on such property
as shall be prescribed by law." Article 10, § 3.

"All assessments hereafter authorized shall be on
property at its cash value." Article 10, § 7.

The constitutional mandates were implemented
by the general property tax act (PA 1893, No 206,
as amended [CL 1948 and CLS 1961, § 211.1 *et seq.,*
as amended by PA 1963, No 66, (Stat Ann 1960 Rev
and Stat Ann 1963 Cum Supp § 7.1 *et seq.*)]). The
act provides for the uniform assessment and taxa-
tion of all taxable property, *both real and personal*
other than intangibles, at the standard of true cash
value (CL 1948, § 211.1, CLS 1961, § 211.24, as amend-
ed by PA 1963, No 66, § 211.27 [Stat Ann 1960

Rev § 7.1, Stat Ann 1963 Cum Supp § 7.24, Stat Ann 1960 Rev § 7.27]). Section 24 of the act provides:

"The supervisor [assessing officer] shall estimate, according to his best information and judgment, the true cash value of every parcel of real property and set the same down opposite such parcel. He shall also estimate the true cash value of all the personal property of each person, and set the same down opposite the name of such person."

Thus all taxable property, real and personal, is placed in *one category* to be uniformly assessed and taxed.[1]

The twin demands of uniformity and cash value have plagued taxing authorities for years. If the requirement of cash value were met, the requirement of uniformity would also be met, but there has been a constant erosion of the concept of cash value.[2] The reasons for that erosion need not concern us, other than to note that because of differences in the concept of cash value from one assessing unit to another, because of the endeavor of an assessor to obtain an advantage for the taxpayers within his district by reducing assessments, or because of the wealth of a unit or the limited needs of its citizens, great disparities in assessments have occurred from governmental unit to governmental unit. Assessments often bear no relation to the

---

[1] A uniform mode of assessment does not necessarily produce a uniform result. Applying the same formula of assessment to personal property as is applied to real property could produce an inequality which the uniformity provision was designed to prevent. Compare *Kingsford Chemical Co.* v. *City of Kingsford,* 347 Mich 91, 106, 107, and *Titus* v. *State Tax Commission,* 374 Mich 476, 480. Also, see the cases cited for the following proposition: "A generally approved practical scheme of valuation may yet produce fundamentally wrong results under the circumstances of a particular case."—*Twenty-Two Charlotte, Inc.,* v. *City of Detroit,* 294 Mich 275, 285.

[2] See article 9, § 3, Michigan Const 1963, providing for assessments not to exceed 50% of cash value after January 1, 1966.

actual cash value[3] of the property or to the level of assessments in adjoining governmental units.

Equalization procedures attempt to meet the problem, it being the purpose of these procedures to adjust or correct all of the different modes of assessment to achieve uniformity among governmental units within a county and uniformity among all of the counties of the State. See *School District No. 9, Pittsfield Township, Washtenaw County, v. Washtenaw County Board of Supervisors,* 341 Mich 388, 405, and *Calumet & Hecla, Inc., v. Township of Allouez,* 363 Mich 671. But apparently equalization never quite succeeds in overcoming the race for advantage.

With the destruction of the standard of cash value, the standard of uniformity becomes even more imperative, not only from tax unit to tax unit but as to the individual taxpayer within a unit. If there was ever any question as to which should control, the principle of equal treatment regardless of cash value is now recognized as being primary. See *Titus* v. *State Tax Commission, supra; Buerger* v. *Alleghany County Board of Property Assessment,* 188 Pa Super 561 (149 A2d 466, 469). As a practical matter, unequal assessments must be reduced to the average level of assessment if the taxpayer is to have a remedy. *In the Matter of Appeals of Kents,* 34 NJ 21, 25 (166 A2d 763, 765); *City of Passaic* v. *Botany Mills, Inc.,* 72 NJ Super 449, 457 (178 A2d 657, 662), certiorari denied 37 NJ 231 (181 A2d 13).

Upon the record before us, General Motors' personal property was assessed at an average of 83.7%

---

[3] As an example, Livonia admits assessing land and buildings on the 1963 roll at a common or average level of 40% and 43%, respectively, of current value. The commission found, through its 1963 equalization survey, an average assessment level in Livonia of 36.82% of current value for realty assessments.

of State equalized value.[4]   The weighted average[5] of all property — real and personal — would be 76% of State equalized value.   This is the average which (assuming the correctness of the commission's findings) should have been used in computing General Motors' personal property tax liability.

We hold that the mode of assessment used by the State tax commission was incorrect in that, having adopted a standard of average assessment levels to determine the question of uniform treatment of General Motors, it did not take into account the average assessment level of all property, *real* and *personal*.   *Titus* v. *State Tax Commission, supra.*

## 2.

It is argued that to reduce the personal property assessment of General Motors and not that of any other taxpayer will bring about an unfair and inequitable result in that General Motors alone will benefit at the expense of others.   The contention is that the commission should order a reassessment of all personal property within the city.   The commission, under its powers, might follow such a procedure.   *In re Dearborn Clinic & Diagnostic Hospital,* 342 Mich 673, 681.   It is not, however, the remedy the commission elected to afford this taxpayer.[6] This proceeding is an appeal by a single taxpayer. If correction of an improper assessment is to be made dependent upon a general reassessment of a taxing district, a taxpayer's remedy would become wholly inadequate.

---

[4] *I.e.,* 83.7% of 50% of true cash value, State equalized value being 50% of true cash value.

[5] We assume that in determining the weighted average of all property, real or personal, the property of General Motors was not a significant factor.   In the event that it would affect the weighted average, it should be excluded.   See *Kingsford, supra,* pp 105, 107.

[6] See OAG 1961–1962, No 3602, p 176.

The United States Supreme Court, speaking of the requirements of the equal protection clause of the Fourteenth Amendment, held:

"The right is the right to equal treatment. He [the taxpayer] may not complain if equality is achieved by increasing the same taxes of other members of the class to the level of his own. The constitutional requirement, however, is not satisfied if a State does not itself remove the discrimination, but imposes on him against whom the discrimination has been directed the burden of seeking an upward revision of the taxes of other members of the class." *Township of Hillsborough* v. *Cromwell,* 326 US 620, 623 (66 S Ct 445, 90 L ed 358).

We need not decide whether such inadequacy violates our standard of uniformity since discretion is lodged in the tax commission to afford either general or specific relief.

The question to be determined is: What is the average level of assessment of all real and personal property within the city of Livonia? The city has a right to make its proofs based upon the work of its assessor, or any other proofs it may care to adduce. The taxpayer has the same right. Finally, the commission may pursue such independent examination, through its staff or other resources, as it elects.

The question of proofs to be used in a commission hearing was before this Court in *Titus* v. *State Tax Commission, supra.* While the Court did not there agree as to the admissibility of the proofs, there was no disagreement but that proper proofs might be presented with regard to average assessment levels. The standard of proof in an administrative hearing is provided for in PA 1952, No 197, § 5, as amended (CLS 1961, § 24.105 [Stat Ann 1961 Rev § 3.560(21.5)]). In *Winokur* v. *State Board of Dentistry,* 366 Mich 261, 265, it was stated:

"The statute in regard to the admission of evidence in administrative proceedings provides a wide latitude for a hearing board."

Equalization studies, though made primarily for the purpose of equalizing tax levels between governmental units, obviously need not conform with a local assessor's findings and may be proper proof if a foundation is laid. *Kingsford Chemical Company* v. *City of Kingsford, supra.* See comment in *Buerger* v. *Alleghany County Board of Property Assessment, supra* pp 567, 568 (149 A2d 470), and *People, ex rel. Wenzel,* v. *Chicago & N. W. R. Co.* (1963), 28 Ill2d 205 (190 NE2d 780). If equalization studies of a prior year are pertinent, said studies might also be considered. Upon remand, the commission should receive only such evidence as would be competent, acting under authority of PA 1952, No 197, § 5.

### 3.

The city of Livonia, Wayne county by brief *amicus,* and the attorney general raise the question as to whether, the city assessor having used one mode of assessment, it was proper for the tax commission to use some other mode. If the assessor had uniformly assessed all personal property in Livonia, there would have been no need for the commission to turn to other evidence to determine the level of assessments. However, the commission did not accept the city's claim that this was done.[7]

---

[7] *"Although the assessor at the 1963 hearings claimed the assessments resulted from a rigid application of a formula, there were other factors which strongly affected the apparent average level of assessment.*

"State tax commission audit of statements filed with the assessor were, in many cases, far short of reporting the actual costs requested. The unreported property included inventory as well as installed equipment. In some cases the audit by the State tax commission field staff

It was not obliged to do so.[8]  It was bound to make its own findings and determination based upon the proofs presented to it.

Reversed and remanded to the Michigan State tax commission for further proceedings in accordance with this opinion.  No costs, a public question being involved.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, and O'HARA, JJ., concurred.

SOURIS, J., did not sit.

---

revealed a hesitancy to report full costs even in response to requests for personal property statements by the State tax commission.

"*In view of the findings in the personal property study plus the continued failure of the assessor to adequately check the reports, the State tax commission must consider the findings described above as superior to any other representations brought forward for consideration.*"  Finding of State tax commission (emphasis supplied).

[8] "The statutes (CL 1929, § 3406 [CL 1948, § 211.18 (Stat Ann 1960 Rev § 7.18)]) require every property owner to make a statement to the assessing officers.  But such statements are not controlling in the fixing of the valuation of the taxpayer's property.  *United States Radiator Corp.* v. *Wayne County*, 192 Mich 449.  Nor is the action of the local assessing officer, or of the local board of review, controlling where the jurisdiction of the State tax commission is invoked and it has acted in the premises.  CL 1929, §§ 3543–3547 [CL 1948, §§ 211.148–211.152 (Stat Ann 1960 Rev §§ 7.206–7.210)]."  *Hudson Motor Car Co.* v. *City of Detroit*, 282 Mich 69, 80 (113 ALR 1472).