CONSUMERS POWER COMPANY *v.* CITY OF MUSKEGON.

1. Taxation—State Tax Commission—Equalization.

State equalization of taxation does not deal with individual local assessing districts within a county, but only with aggregate values of all of the counties in the State; therefore any increase or decrease of the county's equalized value resulting from State equalization is spread back ratably to the properties in the cities and townships.

2. Same—Assessments.

Property shall be assessed at 50% of its true cash value (Const 1963, art 9, § 3; CLS 1961, § 211.27).

3. Same—State Equalized Valuation—Ad Valorem Taxes.

The levy of all *ad valorem* taxes is upon the State equalized value of the property subject to tax.

4. Same—Assessment—Finality—Equalization.

The original tax assessment by a local tax assessor is tentative and not final until it has been adjusted by the process of county and State equalization.

5. Same—County Equalization—Uniformity.

County equalization is designed to establish an identical assessment level for all local units within the county by adding or subtracting from the aggregate assessed valuations of the local units within the county.

References for Points in Headnotes

[1] 51 Am Jur, Taxation § 780 *et seq.*
[2] 51 Am Jur, Taxation § 696.
[3] 51 Am Jur, Taxation § 26.
[4] 51 Am Jur, Taxation §§ 770–774.
[5] 51 Am Jur, Taxation § 741 *et seq.*
[6, 7] 51 Am Jur, Taxation § 745 *et seq.*
[8] 5 Am Jur 2d, Appeal and Error § 1009.

6. SAME—PROPERTY—EQUAL TREATMENT—CASH VALUE.

The principle of equal treatment from one tax unit to another and as to the individual taxpayer within the unit, in taxation of real and tangible personal property is regarded as primary.

7. SAME—PROPERTY—EQUALIZATION.

Summary judgment for defendant in action by property owner to recover money paid in excess of legal *ad valorem* taxes on plaintiff's personal property on ground that equalization was unlawful because it resulted in assessment at more than 50% of true cash value *held*, proper where under the facts of the case, even if the assessment exceeded 50%, it did so for every property in the assessment unit, and relief to one taxpayer would be unfair to all others (Const 1963, art 9, § 3).

8. COSTS—TAXATION—PROPERTY.

No costs are allowed in action by property owner to recover money paid for *ad valorem* taxes claimed to be excessive, a public question being involved.

Appeal from Muskegon, Engel (Albert J.), J. Submitted Division 3 June 4, 1968, at Grand Rapids. (Docket No. 4,494.) Decided September 24, 1968.

Complaint by Consumers Power Company, a Maine corporation, against City of Muskegon, a municipal corporation, to recover money paid for taxes claimed to be excessive. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Hathaway, Latimer, Clink & Robb (William Kerr,* of counsel), for plaintiff.

*Poppen, Street & Sorensen,* for defendant.

HOLBROOK, J. This is an appeal by Consumers Power Company, plaintiff, from an order granting summary judgment in favor of defendant, city of Muskegon, denying recovery to plaintiff on its claim for refund of $10,615.62, the claimed excess of legal *ad valorem* taxes on plaintiff's personal property

for the year 1966 paid to defendant city under protest.

The undisputed facts appear to be as follows: the assessor for the city of Muskegon, in 1966, after being furnished by plaintiff with a form showing the valuation of its personal property within the city as amounting to $4,661,000, assessed plaintiff's personal property located in that city at $2,318,000. Consumers Power Company appealed to the board of review of the city of Muskegon which confirmed the action of the city assessor. Thereafter appeal was taken to the State tax commission wherein plaintiff raised the single issue of uniformity of taxation by contending that the valuation of the property on appeal was excessive based on equalization applied to the total value of the city of Muskegon, *i.e.,* the plaintiff in effect claimed that it was having its property assessed at 50% of true cash value but that other taxpayers within the city were not and that therefore, the assessment was unlawful as not being uniform.

Prior to the hearing and decision of plaintiff's appeal to the State tax commission, there occurred the annual county equalization by the Muskegon county board of supervisors and the yearly State equalization by the State tax commission. The county board did not credit the assessor for the city of Muskegon with assessment at 50% of true cash value. Attempting to equalize the properties in the various local units of the county at 50% of true cash value, the board increased the aggregate assessed valuation of the city of Muskegon from $136,868,775 to $144,999,-482. Mathematical computation indicates that the county board believed that the assessor of the city of Muskegon was assessing at approximately 47.2% of State equalized value, not at 50%, as he was claiming.

The State equalization in May, 1966, determined that the efforts of the county board to equalize the county at 50% had fallen somewhat short of the mark.    Thus, the total equalized value of Muskegon county was raised from $459,028,000 to $481,643,000, the latter constituting what the State tax commission believed to be 50% of the aggregate true cash value of assessable properties in the county.

Since State equalization does not deal with individual local assessing districts within a county but only with the aggregate values of the 83 counties in the State, any increase or decrease of the county's equalized value resulting from State equalization is spread back ratably to the properties in the cities and townships.    The county board of supervisors, during county equalization, determined that taxable property in the city of Muskegon comprised 31-.58837% of the total value of taxable properties in the county.    A final equalized value of $152,143,193, *i.e.,* 31.58837% of the county's State equalized value of $481,643,000, was attributed in the spread-back of the increase of the county's equalized value to the city of Muskegon.

Since the original assessment of the city amounted to $136,868,775, a factor of 1.112 was properly applied[1] to the original assessments of property to determine their State equalized value.    Plaintiff's original assessment of $2,318,000 thus was equalized at $2,577,616.

Plaintiff's assessment complaint to the State tax commission was resolved by order of the State tax commission rendered in November, 1966, wherein the commission determined that assessments in the city of Muskegon were at a level of 50% of true cash value.    The uniformity issue was determined

---

[1] *Kingsford Chemical Company* v. *City of Kingsford* (1956), 347 Mich 91.

adversely to plaintiff,[2] from which plaintiff did not appeal.

Plaintiff paid the *ad valorem* tax upon its personal property under protest on January 9, 1967, specifying as grounds the following:

"1. Its property was assessed and thereafter equalized, for the purpose of determining the tax, at an amount in excess of 50% of the true cash value of such property, contrary to the prohibition contained in Const 1963, art 9, § 3 and PA 1965, No 409.

"2. By reason of the levy of the tax on a State equalized valuation basis increased beyond the limitation imposed by law, the city and other governmental units sharing in such tax have been unjustly enriched in an amount in excess of $10,000, based on an overassessment in excess of $200,000.

"3. The assessment of the tax disregards the uniformity rule of taxation."

Suit upon the protest was brought timely within thirty days after payment. Defendant moved for

---

[2] The commission's order reads in part:

"The cash value of appellant's property, as of tax day, after consideration of the advantages and disadvantages of its location, quality, physical, functional and economic depreciation and obsolescence and salability, is determined by this commission in the amount of $4,661,000. Such finding of cash value is based upon, and supported by, a reproduction cost approach to its valuation.

"Taxable properties in the local unit are assessed in a significant range of from 40% to 60% of their true cash value, or approximately at 50%, which is substantiated by assessment. level studies made for the purpose of individual appeals as well as supporting data utilized in county and State equalization.

*"Reasons for Decision*

"The appellant's property is not assessed at a measurably greater proportion of cash value than the assessed values of other taxable properties in the assessing unit.

*"There is no significant variance between the general level of assessments and the level of appellant's assessment resulting in unconscionable tax discrimiation (tax preference) of appellant's property in violation of constitutional tax uniformity and due process clauses.*

"Wherefore, it is hereby ordered that the amount of $2,318,000 be placed upon the assessment roll as the true and lawful value of such property." (Emphasis supplied.)

summary judgment under GCR 1963, 117.2(1), and supported it by an affidavit of the city assessor.[3] In a ruling dated August 23, 1967, the Muskegon county circuit court granted defendant's motion for summary judgment. Plaintiff appeals.

The following two questions appear to present the legal issues necessary to be determined on this appeal:

1. *Do Const 1963, art 9, § 3, which requires that property be assessed for tax purposes at not to*

---

[3] "Harold D. Baker, being first duly sworn, deposes and says, that he is the city assessor of the city of Muskegon, Michigan, and that he has personal knowledge of all of the facts herein set forth.

"Deponent says that he assessed the personal property of Consumers Power Company for the year 1966 at the sum of $2,318,000, said figure representing 50% of true cash value in his opinion, and that said assessment was upheld by the board of review of the city of Muskegon.

"Thereafter, the board of supervisors of the county of Muskegon increased the assessed valuation of the city of Muskegon from $136,868,775 to $144,999,482 and indicated the city of Muskegon should bear 31.58837% of the total county levy.

"On appeal by Consumers Power Company to the State tax commission on its personal property assessment, the State tax commission entered its order that the Consumers Power property was not assessed at a measurably greater proportion of cash value than the assessed values of other taxable properties in the city, and confirmed the assessment originally made by this deponent at $2,318,000.

"On the fourth Monday in May, 1966, the State tax commission, which is also the State equalization board, increased the total equalized value of Muskegon county from $459,028,000 to $481,643,-000, and at the September meeting of the board of supervisors, the county allocated the city of Muskegon 31.58837% of $481,643,000, making a final or equalized value of $152,143,193 for the city of Muskegon instead of the actual original assessed value of $136,868,-775. This was an increase of 11.2%.

"Prior to 1966, the *actual* assessed value instead of *equalized* value was shown on the tax bills and the tax rates adjusted upwards. Under the present statute, the *equalized* value must be shown on the tax bill, and in doing so the final equalized value for the city of Muskegon in the sum of $152,143,193 was divided by the actual assessed value of $136,868,775 to find a factor of 1.112, and this factor was applied to the assessed value of each and every parcel of real and personal property on the entire city assessment roll to show the State *equalized* value. This value was then multiplied by the allocated taxes to determine the individual tax bill. By the use of this process, the value of Consumers Power Company's personal property was increased from $2,318,000 to $2,577,616, which was the figure used in levying the 1966 taxes, and resulted in an increase of $10,615.62 in the amount of taxes over what they would have been had the tax been levied on the original assessment basis."

*exceed 50% of true cash value, and CLS 1961, § 211.27 (Stat Ann 1968 Cum Supp § 7.27) which requires property be assessed at 50% of true cash value, have the effect of precluding subsequent equalization of assessments?*

2. *Did plaintiff's complaint state a claim upon which relief could be granted?*

Plaintiff's complaint in the instant action accords with the objections made by plaintiff to the tax payment in its protest statement and is authorized by CL 1948, § 211.53 as amended by PA 1962, No 133 (Stat Ann 1968 Cum Supp § 7.97).

The answer to the first question posed above, in effect, will determine the answer to the second question.

Whereas the 1908 Constitution required that all assessments on property be made "at its cash value" (Const 1908, art 10, § 7), the 1963 Constitution, art 9, § 3 states that:

"The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments."

The applicable statute implementing the 1963 Constitution is CLS 1961, § 211.27, as amended by PA 1965, No 409 (Stat Ann 1968 Cum Supp, § 7.27), wherein the legislature provided *inter alia* that "property shall be assessed at 50% of its true cash value in accordance with article 9, section 3 of the Constitution."

Since plaintiff claims the original assessment by the assessor of the city of Muskegon amounts to fifty percent of the true cash value of its personal property, plaintiff does not quarrel therewith. It

does object to the increase of this original assessment (resulting from county and State equalization) and asserts that the levy of *ad valorem* tax upon the equalized value was illegal.

Since *School District No 9, Pittsfield Township, Washtenaw County* v. *Washtenaw County Board of Supervisors* (1954), 341 Mich 388, it has been unquestioned that the levy of all *ad valorem* taxes is upon the State equalized value of property. *The original assessment is merely tentative and not final until it has been adjusted by the processes of county and State equalization.* See, also *St. Ignace City Treasurer* v. *Mackinac County Treasurer* (1944), 310 Mich 108. We assume that all of the other assessments made by the local assessor of the city of Muskegon and not objected to by the owners were assessed on the same basis as Consumers Power Company and were as final for all purposes without appeal as the assessment of plaintiff's personal property after appeal to and ruling of the State tax commission.

In the scheme of *ad valorem* taxation, the general property tax law calls for uniformity in the original assessment. Recognizing, however, that the several townships, villages, and cities within a county, each being served by a different assessor, might achieve uniform internal assessment at different proportions of true cash value, the legislature provided for county equalization which is designed to achieve external uniformity of assessment levels. Stated simply, county equalization is supposed to establish an identical assessment level for all local units within the county by adding or subtracting from the aggregate assessed valuations of the local units within the county.

The legislature implemented the uniformity and system of equalization of assessment provisions of the Constitution by providing for State equalization.

In this process, the aggregate values of the 83 counties are adjusted by the State tax commission to a common denominator, fifty percent of true cash value, and this adjustment is *final*.

It may be that there was mistaken judgment as to the aggregate value of the city of Muskegon by the county board when it equalized the county in 1966. Apparently nearly 6% was added to the aggregate assessed valuation of the city, which valuation subsequently was found by the State tax commission[4] to have been fifty percent of true cash value.

It also appears that county equalization fell short of establishing the aggregate value of taxable properties within the counties at fifty percent of their true cash value. The county board of supervisors determined the total equalized value of Muskegon county at $459,028,000, whereas the State tax commission, sitting as a State board of equalization, determined such value to be $481,643,000.

As a result of possible errors made in the county equalization, additional value was spread back upon taxable properties in the city of Muskegon. It could be argued that in effect the final equalized values of taxable properties in the city amounted to 55.6% of true cash value. If true, the assessments would exceed the constitutionally established standard, as implemented by the legislature, of fifty percent of true cash value. Under such circumstances, would plaintiff have a right to relief? The answer is "no."

Mr. Justice ADAMS stated in *In re Appeal of General Motors Corporation* (1965), 376 Mich 373, 379:

"With the destruction of the standard of cash value, the standard of uniformity becomes even more

---

[4] In the individual assessment appeal of plaintiff, the State tax commission found that the original assessments of the city were made at fifty percent of true cash value.

imperative, not only from tax unit to tax unit but as to the individual taxpayer within a unit. If there was ever any question as to which should control, the principle of equal treatment regardless of cash value is now recognized as being primary. See *Titus* v. *State Tax Commission* (1965), 374 Mich 476; *Buerger* v. *Allegheny County Board of Property Assessment* (1959), 188 Pa Super 561, 565, 566 (149 A2d 466, 469)."

*Calumet & Hecla, Inc.* v. *Township of Allouez* (1961), 363 Mich 671, reiterates the holding of *School District No. 9, Pittsfield Township, Washtenaw County* v. *Washtenaw County Board of Supervisors, supra,* to the effect that *ad valorem* taxes are to be levied upon the State equalized value of property. In the case at bar, this was done.

Plaintiff's case, although at first blush appearing unique, is nearly identical to *Sloman-Polk Co.* v. *City of Detroit* (1933), 261 Mich 689, which controls our decision. In pertinent part, it reads (pp 691, 692):

"Plaintiff, while not attacking the personal good faith of the assessing and reviewing officers, claims the assessment was fraudulent in law. It offered to prove that, by reason of the business depression, values had shrunk greatly since 1930, and the property was worth not to exceed $200,000 in 1931; that the city officers admitted that the assessment of plaintiff's property as set by them was excessive, was more than the 'true cash value'; that the city officers did not consider the depressed existing market, but made the assessments on the basis of former years in order to maintain the financial position of the city of Detroit; and that the board of State tax commissioners denied it a hearing on testimony of values for the stated reason that, if plaintiff's assessment were reduced, it would be necessary to reassess the whole district.

"The general principles are not in doubt. The law requires the assessment to be made at true cash value. The officers do not claim that the depression had made values of real estate so uncertain that there was no other reasonable standard for assessment in 1931 than that of former years, nor that they used their best judgment as to present values. Intentional overassessment is fraud. A court of equity has jurisdiction to relieve against such fraud. The relief to be granted is reduction of plaintiff's taxes to their just proportion of the public burden. *Merrill* v. *Humphrey* (1871), 24 Mich 170; *Fletcher Paper Co.* v. *City of Alpena* (1910), 160 Mich 462; *Story & Clark Piano Co.* v. *Hilderink* (1915), 189 Mich 123; *Copper Range Co.* v. *Adams Township* (1919), 208 Mich 209; *Township of Beaverton* v. *Lord* (1926), 235 Mich 261.

"The case, however, is unique. The overvaluation was not confined to plaintiff or its property nor to classes of persons or property but ran against all property in the city, upon the same standard. A reduction of plaintiff's assessment to values of 1931, without corresponding reduction on all other property, would result, not in equality and justice to plaintiff, but in favoritism to it and injustice to other property owners. A court of equity is never justified in rendering an inequitable decree. 21 CJ 661. The only method by which equity could be done under the circumstances would be for the court to assume the task, not within its proper functions nor practical of operation, of reassessing the whole city. The character of the relief required in order that it may be equitable puts it outside the province of a court of equity.

"Moreover, it is not shown that plaintiff has been injured in fact, as all property has been overassessed upon the same basis. Consequently, the proportion of each parcel to the tax levy is the same as though proper assessment had been made. As plaintiff has shown no injury peculiar to itself, susceptible of practical and equitable correction by a court

of equity, the decree will be affirmed, but without costs."

Also, see *Kingsford Chemical Company* v. *City of Kingsford, supra.*

We find that under the facts in this case, Const 1963, art 9, § 3 and CLS 1961, § 211.27 (Stat Ann 1968 Cum Supp § 7.27) did not preclude the equalization effected by the State tax commission. The complaint of the plaintiff being based upon the claimed illegality of the action of the State tax commission in equalizing the assessments for Muskegon county resulting in an increase in the assessments for the city of Muskegon including plaintiff's personal property assessment, and having found that the equalization action was lawful, we conclude that the plaintiff's complaint failed to state a claim upon which relief can be granted.

Affirmed. No costs, a public question being involved.

McGregor, P. J., and Kaufman, J., concurred.