JACKSON COUNTY BOARD OF COMMISSIONERS v STATE TAX COMMISSION

Docket No. 65350. Submitted October 6, 1983, at Lansing.—Decided November 7, 1983.

The State Tax Commission made a determination of the state equalized value of the agricultural class real property in Jackson County in 1981. In doing so, the commission ignored an appraisal study made by the county and based the decision, in part, on a sales study prepared by the Treasury Department. The Jackson County Board of Commissioners sought leave to appeal, which was denied. Leave to appeal was sought in the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded for consideration as on leave granted. 413 Mich 945 (1982). *Held:*

1. Appellate review of determinations concerning intercounty equalization is limited to review for fraud, error of law, or the adoption of wrong principles.

2. The State Tax Commission, in deciding state equalized value questions, need not consider an appraisal study not prepared in accordance with Chapter XVI of the Assessor's Manual. The county's study was not prepared in accordance with the Assessor's Manual. The tax commission was free to ignore it. Further, the commission was aware of other studies which suggested that the county's study was inaccurate.

3. The sales study used by the State Tax Commission to decide the issue of intercounty equalizations is not rendered statistically invalid by the inclusion of sales alleged to be atypical.

4. Inclusion, in a sales study of 177 sales used by the State Tax Commission to determine intercounty equalization, of 3 sales which should have been excluded does not amount to the adoption of a wrong principle so as to overturn the commission's findings on appeal.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 72 Am Jur 2d, State and Local Taxation § 799.
[2] 72 Am Jur 2d, State and Local Taxation § 810.
[5] 72 Am Jur 2d, State and Local Taxation § 800.

1. TAXATION — STATE TAX COMMISSION — APPRAISAL STUDIES — ADMINISTRATIVE RULES.

  The State Tax Commission, in deciding state equalized value questions, need not consider an appraisal study not prepared in accordance with Chapter XVI of the Assessor's Manual (1979 AC, R 209.41).

2. TAXATION — STATE TAX COMMISSION — EQUALIZED VALUE — APPEAL.

  Appellate review of determinations concerning intercounty equalization is limited to review for fraud, error of law, or the adoption of wrong principles.

3. TAXATION — STATE EQUALIZATION — COUNTY EQUALIZATION.

  For state equalization purposes, the State Tax Commission need not develop valuations for each township within the county; it is county equalization that is supposed to establish an identical assessment level for all local units within the county by adding or subtracting from the aggregate assessed valuations of the local units within the county.

4. TAXATION — STATE EQUALIZATION — SALES STUDIES.

  A sales study used by the State Tax Commission to decide the issue of intercounty equalization is not rendered statistically invalid by the inclusion of sales alleged to be atypical.

5. TAXATION — STATE EQUALIZATION — SALES STUDIES — APPEAL — ADOPTION OF WRONG PRINCIPLES.

  Inclusion, in a sales study of 177 sales used by the State Tax Commission to determine intercounty equalization, of 3 sales which should have been excluded does not amount to the adoption of a wrong principle so as to overturn the commission's finding on appeal.

*Eugene G. Wanger,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistants Attorney General, for defendant.

Before: ALLEN, P.J., and BEASLEY and M. E. CLEMENTS,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Allen, P.J. Plaintiff appeals from defendant State Tax Commission's (STC) May 26, 1981, determination of the state equalized value (SEV) of Jackson County's agricultural class real property for tax year 1981. This Court denied plaintiff leave to appeal by order dated September 3, 1981, one judge dissenting, and plaintiff applied to the Supreme Court for leave to appeal. On June 29, 1982, the Supreme Court remanded the case to this Court for consideration as on leave granted, 413 Mich 945 (1982).

On April 23, 1981, plaintiff determined the total 1981 county equalized value of the agricultural class real property in its 20 assessing units to be $143,866,028. This figure was based upon a county-wide appraisal study of the agricultural real property in each assessing unit in which random samples of land from each unit were appraised. The study was prepared by the county equalization department. On May 6, 8, and 19, 1981, the STC held hearings at which plaintiff presented evidence and argued in favor of its appraisal study. On May 26, 1981, the STC made its determination of the 1981 state equalized value of Michigan's 83 counties. As part of the determination, the STC found that the taxable value of plaintiff's agricultural class real property for the 1981 tax year was $148,672,904, an increase of $4,806,876 over plaintiff's determination. This finding was based at least in part on a sales ratio study prepared by the Treasury Department staff.

On appeal, plaintiff raises two issues. First, plaintiff challenges the STC's decision to "reject" plaintiff's appraisal study. Second, plaintiff contends that the STC committed an error of law or adopted a wrong principle of law by basing its determination of the SEV of the county's agricul-

tural class of real property on a defective sales ratio study prepared by the Treasury Department staff.

I

Plaintiff's challenge to the STC's rejection of plaintiff's study is posited on the theory that rejection was primarily because plaintiff's study found only a 2.26% increase in values over 1980, whereas other counties reported higher increases. Plaintiff correctly argues that this is not a valid reason for rejecting the county study since the market for various classes or property, including the agricultural class, varies from county to county. Further, such a comparison makes it virtually impossible for a county to challenge the STC because the county equalization staff would not have the time or resources to analyze the work of the other counties to determine if the other county increases were valid.

Two pieces of evidence give some credence to plaintiff's claim. The first is a February 18, 1981, letter from Roland Anderson of the STC stating:

"I am in receipt of a report from Tax Commission District #11 Supervisor, Eugene Hall, which indicates serious deficiencies regarding your 1980 County Equalization Department Agricultural real property study. A copy of reports citing the deficiencies is attached. Also preliminary review of the study indicates that the true cash value of the agricultural real classification shows an increase in the true cash value of 2.26 percent over 1980. This percentage increase does not uniformly compare with the increase reported in other county equalization department studies.

"The Tax Commission has attempted to establish an early warning system in order to prevent any surprises, as far as humanly possible, during the equalization

process. This letter is intended to be part of that system.

"The Tax Commission staff and indeed, the Commission itself, will make every effort to keep you informed and will receive and consider any or all data that the Jackson County Board of Commissioners deems pertinent in this matter.

"The best protection any County Board of Commissioner[s] can have is an equalization study made in accord with the requirements of the Michigan Assessors Manual. Perhaps, working together, we can eliminate the problems outlined in the attached reports."

The second piece of evidence, a portion of the STC staff recommendations, states:

"The major contention expressed by Jackson County concerns wet or swamplands. The Staff submits that the sales study conducted by the State Tax Commission District Field Staff is sufficiently representative of the county to determine a state equalized valuation compatible with the agricultural valuations in the other 82 counties. This State Tax Commission study consists of 177 sales over the appropriate 30 month period. Further, a State Tax Commission Unit study using only 1979 sales and units with no sales in 1978 or 1980 shows justification for a county-wide increase similar to the State Tax Commission county-wide sales study."

The Attorney General, representing defendant STC, vehemently denies that plaintiff's study was rejected, or that it was rejected for the reason given by plaintiff. First, the Attorney General notes that plaintiff's appraisal study could have been rejected out of hand by the STC because the study was not prepared in accordance with Chapter XVI of the Assessor's Manual. The equalization study submitted by Jackson County used an "equivalent acres method" which is not in accordance with the Assessor's Manual. Plaintiff does

not dispute this contention, although, pursuant to Rule 41 of the STC Rules, 1979 AC, R 209.41, county equalization studies must be prepared in accordance with Chapter XVI. Thus, plaintiff's study could have been rejected without further ado.

The Attorney General argues that the real reason the STC rejected plaintiff's study was that the study did not correctly determine true cash value. The STC was aware of three separate studies, in addition to plaintiff's study, which had found higher increases in value. The first was a study prepared by Jackson County, which indicated a starting base increase over 1980 of 12.35%. That study was acquired by the STC pursuant to a subpoena *duces tecum.* The second study was the STC's sales ratio study which indicated a starting base increase over 1980 of 5.75%. The third study was a county sales ratio study showing a starting base increase over 1980 of 6.6%. Comparison of these studies with the one submitted by plaintiff caused the STC to have serious doubts as to whether or not the true cash value indicated by plaintiff's study was accurate. In addition, the STC has submitted an affidavit disclosing that nine other counties in Michigan showed an increase in their true cash values over 1980 of a comparable level to that given in plaintiff's original study. Other counties, including Schoolcraft at minus 4.71%, reported an actual decrease in value.

Resolution of the question of whether the county study was rejected for the reasons given by plaintiff or was rejected because, as claimed by the Attorney General, it did not correctly determine true cash value, is largely a factual matter. Under MCL 209.4; MSA 7.604, the STC, when sitting as the State Board of Equalization, is required to file

only a "determination" of SEV. Neither findings of fact nor a formal opinion is required. Appellate review of determinations concerning intercounty equalization is limited to review for fraud, error of law, or the adoption of wrong principles. *Emmet County v State Tax Comm,* 397 Mich 550, 556; 244 NW2d 909 (1976).

Plaintiff admits that resolution of the dispute is a factual matter, but argues that the facts themselves, though not disclosing fraud, equate to an error of law or the adoption of wrong principles. We are by no means persuaded. There were too many studies known to the STC staff, including studies from Jackson County, indicating that agricultural values were higher than plaintiff's study, for us to conclude that rejection was merely because the increase wasn't as high as reported by the county equalization studies. While this inference may be gleaned from paragraph one of the letter of February 18, 1981, quoted earlier, paragraph four of that letter equally suggests that rejection was because the study was not "made in accord with the requirements of the Michigan Assessors Manual". The very presence of the three other studies served to suggest to the STC that plaintiff's determination of true cash value was inaccurate. Further, upon reading the evidence, we find that at no point did the STC ever state that the reason the study was rejected was because it did not show an adequate increase in value. Accordingly, we conclude the STC did not commit an error of law or adopt a wrong principle of law when it rejected plaintiff's appraisal study which showed a county equalized value for the agricultural class of property of $143,866,028.

II

Having rejected the county's agricultural equali-

zation study, the STC adopted its own study, which showed an equalized total of $4,806,876 greater than the county's study. Unlike the county study which was based on appraisals, the STC study was based on sales. Both the appraisal and sales methods are recognized as valid methods. However, plaintiff alleges that, in conducting its study, the STC committed a major error of principle which destroyed the study's statistical validity.

The alleged major error was that the STC grouped all of its sales and assessments from the several units of the county together to produce one ratio for the entire county rather than determining a separate ratio and true cash value (TCV) for each township, and then adding the TCVs together to produce a county total. While this claim may have merit when applied to *intra*county equalization, it lacks validity for purposes of *inter*county equalization. We agree with the Attorney General that, for intercounty equalization purposes, the STC is not charged with developing valuations for each township within the county. Instead, the STC is charged with duly determining the valuation of each class of property within the county as a whole.

In the assessment and equalization process, the local assessor is first required to determine 50% of the true cash value of all the property in his or her unit. This determination must then be approved by the county board of supervisors in county equalization. County equalization is "supposed to establish an identical assessment level for all local units within the county by adding or subtracting from the aggregate assessed valuations of the local units within the county". *Consumers Power Co v Muskegon,* 13 Mich App 334, 341; 164

NW2d 398 (1968). *State* equalization, on the other hand, "does not deal with individual local assessing districts within a county but only with the aggregate values of the 83 counties in the State". *Consumers Power, supra,* p 337. Any increase or decrease of the county's equalized value resulting from state equalization is spread back ratably to the properties in the individual taxing units. Thus, if any local taxing unit has underassessed or misclassified its properties, the other taxing units must move at the *county* equalization level to prevent subsequent unfairness. If some of the taxing units within Jackson County are in danger of bearing more than their fair share of the burden, it is because the county failed to equalize properly.

Plaintiff also contends that a wrong principle of law was adopted when the STC failed to strike from its sales ratio study six sales from six different townships. Three examples of the sales so challenged and the reasons assigned by plaintiff for striking follow:[1]

"*Blackman Township*—1978 Sale (H15-4A) Assessment on this property is not typical of Blackman Township. County believes this sale should be deleted.

"*Columbia Township*—1979 Sale (S31-I etc.) Substantial amount of personal property was included in this sale. C.E.D. estimated personal value to be $35,000 when it analyzed the sale. For this reason Jackson County requests this sale be deleted from the sales ratio study. Represents 5% of 1979 sales.

"*Rives Township*—1979 Sale (C31-3 etc.) Assessment is not typical of Rives Township. County believes this should be deleted for the above reason and because this property did not sell for Ag purposes. Represents 5% of 1979 sales."

The Blackman Township and Rives Township sales

---

[1] Plaintiff challenged eight of the 177 sales. However, two of the challenged sales were deleted by the STC from its study prior to equalization. Thus, the challenged sales are reduced to six.

are suspect by plaintiff because they are "not typical". But plaintiff cites no authority for excluding atypical sales. The STC conducted a comparison study by randomly checking the sales prices of 177 properties assessed by plaintiff. Naturally, a random check will come upon some sales assessed too high and others assessed too low. In each instance the sale would be "atypical". Plaintiff cites no law, and we know of none, rejecting sales merely because they are atypical. If an assessor had failed to properly assess such properties, it is possible other properties were also improperly assessed.

Furthermore, contrary to plaintiff's claim that $35,000 of personal property was included in the Columbia Township sale, the notes of the Tax Commission field staff disclose the $35,000 was subtracted from the sale price prior to processing it in the completed sales study. Similar justifications for the STC's inclusion of the remaining three of the six challenged sales could be given. Assuming, *arguendo,* that these sales were improperly included in the first study, only three of a total of 177 sales studied by the STC would be excludable. We hardly believe such minutiae is cause for finding that a wrong principle of law was employed.

In summary, we hold that the county's study was not prepared in conformity with the Assessor's Manual. We further hold the STC's study was so prepared. We find no evidence on the record that the STC rejected plaintiff's study for improper reasons. Therefore, we affirm the action of the STC establishing the final SEV of agricultural land in Jackson County at $148,672,904 for the tax year 1981.

Affirmed. No costs, a public question being involved.