HOERNER-WALDORF CORPORATION *v.* VILLAGE OF ONTONAGON

1. Taxation—Assessment.
   Taxpayer, contending that its property was assessed at a higher proportion to value than other property in the taxing district, is entitled to relief only if its property was assessed at a ratio of true cash value greater than the average level of assessment of all property, real and personal, in the taxing district.

2. Taxation—Assessment.
   A taxpayer is not entitled to a reduction of his taxes because other taxpayers are paying an excessive or illegal tax; relief may be granted only if he is assessed at a ratio greater than the average level of assessment.

3. Taxation—Average Assessment—Evidence—Relevancy.
   Evidence of the level of assessment in other taxing districts was without probative value and should have been excluded where the issue was what is the correct average ratio of assessment in the county; thus, it was reversible error to allow plaintiff to introduce proof regarding assessments and taxes paid on properties in other assessing districts.

4. Taxation—Assessment.
   Property of corporation, which contended that its property was assessed at a higher proportion to value than other property in the taxing district, must not be included in determining the

---

References for Points in Headnotes
[1–5] 51 Am Jur, Taxation § 647 *et seq.*

weighted average in arriving at the average level of assessment, where the corporation's property represented 36% of the total assessed valuation in the taxing district.

5. TAXATION—EVIDENCE.

All innuendo and argument based on the importance of the taxpayer to the community, including intimation that higher wages would be paid if taxes were reduced, must be avoided on retrial of a suit to determine the validity of a property tax assessment.

Appeal from Ontonagon, Stephen D. Condon, J. Submitted Division 3 October 6, 1969, at Marquette. (Docket No. 6,955.) Decided September 29, 1970.

Complaint by Hoerner-Waldorf Corporation against Village of Ontonagon and Township of Ontonagon for refund of property taxes paid pursuant to ruling by State Tax Commission. The Commission intervened. Verdict and judgment for plaintiff. Defendants appeal. Reversed and remanded for new trial.

*Norman McLean,* for plaintiff.

*Allen R. Briggs* and *Mary Louise Thompson,* for defendants.

Before: R. B. BURNS, P. J., and HOLBROOK and LEVIN, JJ.

LEVIN, J. Confronted with continually increasing property tax assessments and an unsympathetic administrative reaction to its complaints, the plaintiff, Hoerner-Waldorf Corporation, sought relief in court. The defendants, Village and Township of Ontonagon, appeal a jury verdict in Hoerner-Waldorf's favor.

Hoerner-Waldorf owns and operates a pulp processing plant and paper mill located in the village, township, and county of Ontonagon. For the tax year in suit, 1967, its real and personal property was assessed at $1,370,000. It appealed to the State Tax Commission which found:

(1) the true cash value of the property was $7,946,530, and

(2) the "significant"[1] range of assessments within the village and township for various categories of property was 11.82% to 25.47% of true cash value, and the mathematically weighted average level of assessment was 17.22% of true cash value.

The commission entered an order reducing Hoerner-Waldorf's township assessment by $1,600 to $1,368,400, i.e., to 17.22% of the $7,946,530 true cash value. The village assessment was set at $1,340,700 based on a true cash value of $7,785,863.[2] Hoerner-Waldorf paid under protest the taxes billed on such assessments and commenced this action for refund.[3]

At the trial Hoerner-Waldorf claimed that its township assessment should have been reduced to $800,000 and its village assessment to $775,000 and that it was entitled to a refund of $76,000 in township taxes and $21,000 in village taxes. The jury verdict was for precisely one-half of those amounts.

Hoerner-Waldorf makes no claim that its property was overvalued. It accepts as correct the State Tax Commission's determination that the true cash value of its property was $7,946,530 and the case was submitted on that basis. Hoerner-Waldorf

---

[1] Some property is assessed for more and some for less than the highest and lowest figures that mark the boundaries of the "significant range" determined by the commission.

[2] There was testimony that in 1967 the village assessor was required by law to adopt the assessments established by the township assessor.

[3] MCLA § 211.53 (Stat Ann 1970 Cum Supp § 7.97).

successfully contended before the jury that its property was assessed at a higher proportion to value than other property in the taxing district.

It is manifest from the State Tax Commission's findings regarding the range of assessments that the property of many taxpayers in the district was assessed at a lower ratio to value than the 17.22% adopted in fixing the Hoerner-Waldorf assessment. Nevertheless, Hoerner-Waldorf is entitled to relief only if its property was assessed at a ratio of true cash value greater than the "average level of assessment" of all property, real and personal, in the taxing district.[4] The issue, thus, is whether 17.22% is in fact, as found by the State Tax Commission, the average level of assessment.

Nor is it significant that some assessments included in computing the 17.22% ratio, after they are increased for purposes of state equalization, exceed the constitutional standard of 50% of true cash value.[5] A taxpayer is not entitled to a reduction of his taxes because other taxpayers are paying an excessive or illegal tax. Relief may be granted, we repeat, only if he is assessed at a ratio greater than the average level of assessment.

At the trial, the chairman of the State Tax Commission testified regarding the manner in which the 17.22% ratio was established. He conceded that the range of assessments showed that there was a lack of uniformity, that there were inequities, that some

---

[4] See *In re Appeal of General Motors Corporation. City of Livonia* v. *State Tax Commission* (1965), 376 Mich 373, 379, 380, where the Supreme Court ruled that "unequal assessments must be reduced to the average level of assessment" of all property, real and personal, in the taxing district. See, also, *Kensington Hills Development Company* v. *Milford Twp. and Milford Village* (1968), 10 Mich App 368, 373, 374.

[5] Const 1963, art 9, § 3; *In re Appeal of General Motors Corporation. City of Livonia* v. *State Tax Commission* (1965), 376 Mich 373, 379. *Cf. Consumers Power Company* v. *City of Muskegon* (1968), 13 Mich App 334.

property was taxed more heavily than other property, and that the State Tax Commission had failed in its efforts to persuade local assessors to tax all property in accordance with the constitutional standard of 50% of true cash value. A program for the reappraisal and reassessment of all property in Ontonagon County was undertaken in 1966 but at the time of the trial, in November, 1968, had not been completed. The State Tax Commission did not have sufficient resources, personnel and financial, to complete this program and to correct the inequities for the tax year in suit, 1967.

Two officers of Hoerner-Waldorf testified that in their opinion the average level of assessment was 9–1/2% to 10%, not 17.22%. Their testimony appears to have been based upon a survey of deeds and mortgages of township property recorded for the most part in the year 1966—some instruments were recorded in 1965 and 1967. It was assumed that the revenue stamps on the deeds reflected the true consideration and that the mortgages were for 75% of the value of the property. The 1967 assessments of the properties covered in the survey were generally at 10% or less of the values so computed, although some assessments were as high as 15% and a few were at 20% or more. The opinion expressed by one of the Hoerner-Waldorf officers that the personal property assessment ratio was also 10% appears to have been based upon "common knowledge."[6]

Over objection, Hoerner-Waldorf was permitted to introduce an exhibit showing the amount of taxes

---

[6] He testified that his information as to personal property assessments was based on his "observation of inventories of stores in this community and their furniture and fixtures" and a comparison "with the assessments on those properties." The other officer who expressed an opinion as to the real property assessment ratio did not state whether he had any opinion as to the personal property assessment ratio.

per ton of pulp production or capacity paid by paper mills in various communities in the state. This showed that Hoerner-Waldorf was paying $3.78 per ton and no other mill paid more than $2.64 per ton and one paid as little as 62¢ per ton. The mill with the largest capacity paid $1.72 per ton. Hoerner-Waldorf was also permitted, over objection, to argue that a copper mill in another township in Ontonagon County was taxed at a lower percentage of its value than the Hoerner-Waldorf property. During his instructions to the jury, the judge mentioned both Hoerner-Waldorf's claim that lower taxes were paid by paper mills located in other communities and its claim that the copper mill was assessed at a lower ratio.

We have concluded that the judgment of the trial court must be reversed and the case remanded for a new trial because it was error to allow Hoerner-Waldorf to introduce proof regarding assessments and taxes paid on properties located in other assessing districts. The issue in this case is whether Hoerner-Waldorf was taxed at a higher percentage of the value of its property than the average level of assessments in the taxing district where its property is located. The evidence offered by Hoerner-Waldorf concerning the assessments and taxes paid on particular properties located in other taxing districts is without probative value and should have been excluded when the defendants objected. Such evidence does not tend to show what is the correct assessment ratio in Ontonagon Township. If Hoerner-Waldorf desires to challenge the assessments for county tax purposes it cannot make out a case by showing that a single facility in the county, even if it is the largest, is taxed more favorably.[7] Again,

[7] See Daniel R. Fusfeld and Joseph G. Kowalski, Reforming the Michigan Property Tax (1969) (unpublished mimeographed paper),

the issue would be what is the correct average ratio of assessment in the county?

We also think we should note that we have serious doubt as to whether Hoerner-Waldorf has sustained, on the basis of the evidence it presented, its heavy burden of proving the inaccuracy of the 17.22% ratio determined by the State Tax Commission. The record is silent as to whether the deed and mortgage survey covered all transactions during a particular period. Nor does it clearly appear whether the sample was sufficient to indicate the level of assessment for all real property in the district; there is evidence that cut-over timber lands are taxed at a higher level of assessment than real property generally. Also we think the proofs as to the level of assessment of personal property should be more specific. If there is any disparity in the average ratios of assessment between real and personal property, then those ratios must be weighted in arriving at the average level of assessment, all of which must be supported by clear and convincing proof.[8] We also note that in determining the weighted average it would not be proper to include the Hoerner-Waldorf property because it represents such a large percentage, approximately 36%, of the total assessed valuation in the taxing district.[9]

On the retrial all innuendo and argument based on the importance of the Hoerner-Waldorf plant to

---

suggesting as a fundamental reform that taxes be assessed in county assessment districts so as to avoid the inequities which county equalization of township, city and other local assessments has not in practice adequately corrected. A description of the equalization process and of the inequality in assessment problem appears in Robert H. Pealy, The General Property Tax, Michigan Tax Study, Staff Papers, p 211 (1958).

[8] See *Twenty-Two Charlotte, Inc.* v. *City of Detroit* (1940) 294 Mich 275, 282; *Kingsford Chemical Company* v. *City of Kingsford* (1956), 347 Mich 91, 97, 98.

[9] See *In re Appeal of General Motors Corporation. City of Livonia* v. *State Tax Commission* (1965), 376 Mich 373, 380, n. 5.

the community, including the intimation that higher wages could be paid if the taxes were reduced, should be avoided.

Reversed and remanded for a new trial. Costs to defendants.