KENSINGTON HILLS DEVELOPMENT CO. *v.*
MILFORD TOWNSHIP AND
MILFORD VILLAGE

1. TOWNSHIPS—ZONING—MOST LUCRATIVE USE.

   The township zoning law does not require a parcel to be zoned in accordance with its most lucrative possible use.

2. SAME—ZONING—HIGHWAY FRONTAGE.

   The ultimate township rezoning of land fronting along a busy highway is highly conjectural.

3. SAME—ZONING—HIGHWAYS—RESIDENTIAL USE.

   Land in a township is not made unsuitable to zoning for residential purposes merely because it is on a busy highway.

4. TAXATION — ASSESSMENTS — ZONING — RESIDENTIAL LIMITATION — POTENTIAL COMMERCIAL USE.

   State tax commission determination that property zoned residential, but which had potential for commercial use, may be assessed according to its commercial character for tax purposes, where no evidence was presented that land would ever be zoned commercial, *held,* error, since zoning restrictions limit the use of property.

5. SAME—ASSESSMENTS—ESTABLISHING LAND VALUE BY COMPARISONS.

   The Court looks with disfavor upon the practice of comparing the sale of commercially zoned property with the sale of residenti-

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning §§ 8, 11, 25, 26.
[2, 3]  58 Am Jur, Zoning §§ 8, 142.
[4]  51 Am Jur, Taxation §§ 701, 706.
[5]  51 Am Jur, Taxation §§ 696, 697, 701.
[6]  51 Am Jur, Taxation § 727.
[7, 8]  51 Am Jur, Taxation § 650.
[9]  51 Am Jur, Taxation §§ 767, 790–792.
[10]  20 Am Jur 2d, Costs §§ 15, 16.

ally zoned property, and establishing a taxation value by comparing the monetary value of the property with the asking price of similarly zoned property.

6. SAME—EVIDENCE—OFFERS TO SELL—VALUE.
    Evidence of unaccepted offers of sale of real property, used in establishing a taxation value on plaintiff land developer's property, *held*, improperly considered by State tax commission, since such evidence has traditionally been suspect for land evaluation, absent strong collateral evidence.

7. SAME—VALUE—ASSESSMENTS.
    State tax commission's evaluation of plaintiff land developer's property at $99,000 with a tax assessment of $52,800 which resulted in an assessment in excess of 50% of the appraised value, *held*, error, since the Constitution prohibits assessments in excess of 50% (Const 1963, art 9, § 3).

8. SAME—ASSESSMENT.
    A taxpayer is entitled to the weighted average assessment upon his property not to exceed the constitutional limit of 50% (Const 1963, art 9, § 3).

9. SAME—STATE TAX COMMISSION—REMAND.
    Remand of case to State tax commission because of an error of law or adoption of a wrong principle is ordered for appraisal and assessment at not more than 50% of appraisal as residential property without reliance on potential commercial value under evidence adduced.

10. COSTS—TAXATION—ASSESSMENTS.
    No costs are awarded in appeal from State tax commission on propriety of tax assessment on land, neither party prevailing fully.

Appeal from State Tax Commission. Submitted Division 2 November 9, 1967, at Lansing. (Docket No. 3,074.) Decided March 27, 1968. Rehearing denied June 4, 1968.

Complaint by Kensington Hills Development Co., a Michigan corporation, against Milford Township and Village of Milford, municipal corporations, seeking a reduction of its tax assessment. The State tax commission lowered the property appraisal, and

approved the assessment. Plaintiff appeals. Reversed and remanded.

*Dykema, Wheat, Spencer, Goodnow & Trigg* (*James W. Draper, Robert V. Seymour,* and *Fred J. Fechheimer,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *T. Carl Holbrook* and *Richard R. Roesch,* Assistant Attorneys General, for defendants.

MCGREGOR, J. This Court granted leave to appeal from the Michigan State tax commission the question of whether certain residentially zoned real property was erroneously appraised for tax purposes. Also to be considered is the question of whether an assessment rate of more than 50% on a specific piece of property is valid (a rate of 53.4% being approved by the tax commission when it reduced the evaluation from $105,720 to $99,005 but left the assessment at $52,800), where an established "margin of error" local system of valuation resulted in an average assessment level of 50%.

The property in question is a 36.47-acre tract located on a busy intersection in an expanding southeastern Michigan community. Presently the entire acreage is zoned only for one-family residential development, although commercial zoning and development abounds along the intersecting roads. Prior to 1964 the tract was zoned partially commercial and partially residential, but since that date the entire tract has been zoned residential. Also since 1964 partial rezoning of the subject parcel was sought by the owner and such zoning was not granted by the local zoning authorities. In 1964 and 1965 the property was assessed for $18,200.

A reassessment of the property in 1965 brought a dramatic change in the tax valuation of the subject property, which ultimately led to the appeal before this Court. A reappraised value of $105,720 was arrived at by separately evaluating a 300-foot strip along the highway at $50 per front foot. The balance of the acreage, approximately 27 acres, was valued at $1,500 per acre.

Testimony before the State tax commission gave the reasoning of the assessing authority in separately evaluating the 300-foot-wide strip along the highway. The professional appraiser for the assessing authority testified that he "felt that the highest and best use for the [300 foot strip] was commercial", that it could be rezoned commercial, that the ultimate development for the general area was commercial, and that presently the strip could be sold to buyers of commercial land for $50 per front foot, despite the residential zoning. It is clear that the assessment was made for a value that could only be predicated upon the land's potential commercial usefulness. The $50 per front foot value set was considerably less than the usual $250 per front foot established for the local commercially zoned property, but more than four times the value per acre established for the remaining portion of the subject acres which bore the same residential zoning. The appraiser also stated that he had compared the subject property with similar commercially zoned property and had inquired as to the asking price for similarly situated, residentially zoned property.

On appeal, the plaintiff maintained its consistently held argument that the assessed value was improper, as it set a value for the property based on an illegal use. The defendants retort that the evaluation merely reflects the dictate of the Michigan Const 1963, art 9, § 3 and CLS 1961, § 211.27, as amended by PA 1965, No 409 (Stat Ann 1968 Cum Supp § 7.27) that

true cash value should be established for real property by considering, among other things, the advantages of location.

When it comes to evaluating property, the advantages or disadvantages of location are one thing, and the zoning restrictions are quite another. The observation was made in *Brae Burn, Inc.,* v. *City of Bloomfield Hills* (1957), 350 Mich 425, that adjoining properties which are essentially the same, can have radically different values if but one of the properties is zoned commercial. Zoning law does not require a specific parcel to be zoned in accordance with its most lucrative possible use, *Biske* v. *City of Troy* (1967), 6 Mich App 546, and the ultimate rezoning of highway frontage land is highly conjectural. *Granader* v. *Village of Beverly Hills* (1966), 4 Mich App 697. Land is not made unsuitable for residential purposes merely because it is on a busy highway. *Brae Burn, Inc.,* v. *City of Bloomfield Hills, supra.* No evidence was presented of a plan of area development by a political body having authority to plan and implement such development which would envision the subject property as commercially zoned. The 1964 rezoning of the entire tract as residential would seem to indicate that just the opposite plan is in effect.

Zoning restrictions are real and, during their duration, limit the use of the property as much as deed restrictions. Just as it is error to fail to consider deed restrictions in establishing assessments, *Lochmoor Club* v. *City of Grosse Pointe Woods* (1966), 3 Mich App 524, it is error to assess noncommercial property on the proposition that it will ultimately be zoned commercially.

Other points remain in this case after the resolution of the first issue. One such point was the method of evaluation used by the appraiser for the assessing authority in comparing this residentially

zoned property with the surrounding property. From the preceding discussion it can be deduced that we look with disfavor upon the practice of comparing the sale of commercially zoned property with the sale of residentially zoned property. This Court also looks with disfavor upon establishing a taxation value by comparing the monetary value of the property with the asking price of similarly zoned property. Evidence of unaccepted offers of sale of real property has traditionally been suspect as a tool in land evaluation. See Annotation, 7 ALR2d 781 (1949). Strong collateral evidence is required to establish the reliability of such offers. *Western Michigan University Board of Trustees* v. *Slavin* (1967), 6 Mich App 291.* It is the opinion of this Court that a wrong principle of evaluation was used in the appraisal of the subject parcel.

Also in this case we have the fact that the tax commission reduced the evaluation to $99,005, but let stand the assessment of $52,800 which resulted in an assessment in excess of 50% of the appraised value. In light of the express constitutional mandate, Const 1963, art 9, § 3, that assessments shall not exceed 50%, we find little merit in any of defendants' arguments that a particular piece of property can be assessed at more than 50% as long as the average assessment level does not exceed 50%. Aside from the plain constitutional language, it can be seen in the comments of the constitutional convention, 2 MCLA Const 1963, art 9, § 3 at p 513, that the delegates to the constitutional convention realized that certain communities had assessed some property at a rate in excess of 50% and should be given time to correct the pre-existing excessive assessments. This Court can also find little merit in

---

* Reversed by the Supreme Court without derogating from statement for which the opinion of the Court of Appeals is cited as authority, 381 Mich 23.

the plaintiff's reasoning that it is entitled to an assessment of 46%, being the lowest assessment made by the assessing authorities. Plaintiff cites no authority or logic for this clearly erroneous position. Plaintiff is entitled to the weighted average assessment level, not to exceed the constitutional limit of 50%.

When this Court reverses a holding of the State tax commission because of an error of law or the adoption of a wrong principle, often the case is remanded to establish an evaluation in conformity with the opinion. Error was made in excessively evaluating a residentially zoned strip of land along the highway by relying on its potential commercial value when there was no evidence that the land will ever be rezoned for commercial use. At the hearing of this case there was no dispute that the evaluation of $1,500 per acre for the rest of the tract was not proper, nor was there evidence presented that the 300-foot strip bore a different value for residential purposes than the remainder of the tract. Arguments presented to the contrary by the defendants for the first time in this appeal seem but grasping at nonexistent straws and have no basis in the evidence presented.

It is ordered that this matter be remanded to the State tax commission with instructions that this residentially zoned property be appraised and be assessed at not more than 50% of the appraisal, all consistent with this opinion.

No costs are awarded, as neither party prevailed fully on appeal.

T. G. KAVANAGH, P. J., and FITZGERALD, J., concurred.