NeBoSHONE ASSOCIATION, INC. v STATE TAX COMMISSION

1. TAXATION—APPEAL AND ERROR—CONSTITUTIONAL LAW—PROPERTY
   TAXES—FRAUD—ERROR OF LAW—ADOPTION OF WRONG PRINCI-
   PLES.

   In the absence of fraud, error of law or the adoption of wrong
   principles, no appeal may be taken to any court from any final
   agency provided for the administration of property tax laws
   from any decision relating to valuation or allocation (Const
   1963, art VI, § 28).

2. TAXATION—VALUATION OF PROPERTY—FRAUD—ERROR OF LAW.

   A valuation of property for purposes of taxation which is of such
   proportion as to contradict the judgment of all reasonable men
   is fraudulent, and a valuation at odds with all of the evidence
   of value is constructive fraud or an error of law.

3. NAVIGABLE WATERS—RIPARIAN OWNERS—SALE OF PROPERTY.

   A person who owns land on both sides of a navigable river owns
   the entire soil under the water, but does not own the water or
   the fish in the water and the general public may use the river
   without trespassing on the upland of such riparian owner; this
   fact does not prevent sales and purchases of such property.

4. TAXATION—PROPERTY TAXES—APPRAISAL—CORPORATIONS—RE-
   STRAINTS ON SALE—AVOIDANCE OF TAXES.

   Property owned by a corporation is appraised for taxation in the
   same way and on the same principles as if it were owned by
   natural persons, and neither a private individual nor a corpora-
   tion may self-impose a restriction on the sale of their property
   by means of which they might be able to avoid or limit paying
   their just share of the ad valorem taxes due the government.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 71 Am Jur 2d, State and Local Taxation §§ 20, 26.
[3] 56 Am Jur, Waters § 273 et seq.
[4] 71 Am Jur 2d, State and Local Taxation § 254 et seq.
[5, 6, 9] 72 Am Jur 2d, State and Local Taxation §§ 759–769.
[7, 8] 71 Am Jur 2d, State and Local Taxation § 167.

5. Taxation—Property Taxes—Real Estate—Evidence—Appraisal —True Cash Value.

A detailed valuation and appraisal of a plaintiff's real estate, made by an appraiser for the State Tax Commission at the request of the township in which the realty is located, was competent evidence by means of which the State Tax Commission could ascertain the true cash value of the plaintiff's land.

6. Witnesses—Expert Witnesses—Qualifications—Value of Land.

A witness, to testify as to value of land, need not qualify as an expert belonging to any recognized association of the fraternity of appraisers; any person who has the testamentary qualification of knowledge of the question about which he attempts to testify may testify as to the value of land.

7. Taxation—State Tax Commission—Personal Property—Assessments—Disparate Assessments.

A survey should be made by the State Tax Commission to validate or correct the ratio of assessment of all personal property in a township where an appeal is made from the assessments and the plaintiffs have shown through proper evidence that there were disparities in the assessments of real and personal property.

8. Taxation—General Property Tax Act—Real Property—Personal Property—Case Precedent—Equalization—Level of Assessment.

An amendment to the General Property Tax Act which provides that real and personal property must be equalized separately does not change the rule set forth by the Supreme Court that unequal assessments must be reduced to the average level of assessment of all property, real and personal, in the taxing district; both the amendment and the rule can be given full effect without interfering with each other (MCLA 211.34[1]).

9. Taxation—State Tax Commission—Findings—True Cash Value —Competent Evidence.

Findings of the State Tax Commission that all assessed property in a township had been properly increased to 50% of true cash value are invalid where there is no competent supporting evidence in the record.

Appeal from State Tax Commission. Submitted Division 3 June 7, 1974, at Grand Rapids. (Docket Nos. 17717–17728.) Decided February 10, 1975.

NeBoShone Association, Inc., and Harold S. Sawyer, Guy A. VanderJagt, and Thomas R. Winquist appeal, by leave granted, a decision of the State Tax Commission determining the value of plaintiffs' real and personal property and the tax assessments on that property for 1971 and 1972. The decision of the Tax Commission is reversed, and the matter is remanded to the Tax Tribunal, which now has jurisdiction over such appeals, for further proceedings.

*Warner, Norcross & Judd* (by *Harold S. Sawyer),* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard A. Roesch,* Assistant Attorney General, for defendant.

Before: D. E. HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

D. E. HOLBROOK, P. J. This is an appeal from the State Tax Commission and its determination of plaintiffs' real and personal property assessments in Dover Township, Lake County, Michigan, for the years 1971 and 1972.

The real property of the plaintiff NeBoShone Association, Inc., an Ohio non-profit corporation, (hereinafter called "the Association") consists of approximately 1,775 acres in Dover Township, Lake County. Between four and five miles (25,500 feet) of the Pine River runs through the property. The area is cut-over and partially regrown with second-growth timber, contains no roads, only sand trails suited for "jeep" travel, and is used under

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the restrictions of the Association's articles of incorporation and by-laws exclusively as a wildlife preserve and for hunting and fishing. The Pine River coursing through the property is a navigable waterway and is heavily canoed and fished by the general public.

The corporation has outstanding seven shares or certificates of membership. These memberships are transferable with the approval of a majority of the non-transferring members. Over the years transfers have occurred and presently five out of the seven members are Michigan residents.

Each membership in addition to carrying the indirect, undivided ownership of 1/7 of the land includes the right to build a cottage on the property of the Association at any site not objectionable to the other members. Six members have availed themselves of this right. When a membership is transferred by its owner, the transferee buys the transferor's cottage as well as the membership. The Association exercises no control over the price of either the membership or cottage, but reserves the right to approve the transferee personally.

Other than the six cottages owned by members, the only other structures on the land are the caretaker's house and several minor outbuildings.

The land was acquired piecemeal in some nine contiguous parcels over the years since 1912, and it is still assessed for tax purposes under the nine individual descriptions and the tax is billed to the Association. The members' cottages are assessed separately as "personalty" because of the difference of the ownership of the cottages and the underlying land, and the tax on each cottage is billed to the owning member.

Three of the seven memberships have been sold

in the last ten years. All of these sales were to the three individual plaintiffs herein.

One of these sales occurred in 1964 to plaintiff Harold S. Sawyer. This sale was of the seventh and last membership which had been carried in the treasury of the Association because of a forfeiture many years ago and did not include a cottage since one had never been built by its former owner. In this instance the price of the membership was fixed by the existing six members and the price was $7,500.

In 1968 plaintiff Guy A. VanderJagt purchased a membership including a fully-furnished cottage and garage and including a 1948 Jeepster for the sum of $22,300. He subsequently remodeled and improved the cottage at a cost of approximately $13,000.

In 1970 plaintiff Thomas R. Winquist purchased a membership for a price of $50,000. This membership included a well-furnished cottage with an adjacent swimming pool and a 1968 Jeep in substantially new condition. This purchase also included an extensive array of hunting and fishing equipment, a canoe and other items; the value of which items plaintiff Winquist estimated at $20,000. The family from which he purchased the membership had the titles to the membership and the cottage and personal property in different persons, and there was an allocation made in the purchase agreement itself allocating $10,000 of the purchase price as the price of the membership.

In the year 1970 the real estate of the Association was assessed at approximately $62,000. The personal property of the individual plaintiffs was assessed in 1970 as follows: Mr. Sawyer $8,050; Mr. VanderJagt $14,400; and Mr. Winquist $14,400.

At the request of the township prompted by an unidentified Baldwin land developer, Russell Mackie, an appraiser for the State Tax Commission, made an appraisal of the land and cottages situated on the NeBoShone property, as a result of which he made valuations of the nine parcels of land which totaled $174,475. His total true cash value of the land was $348,950.

In addition, Mr. Mackie at that time determined the true cash value of the Guy A. VanderJagt cottage at $35,000 and stated the assessment to be $17,900. He determined the value of the Harold S. Sawyer cottage at $21,400 and stated the assessment to be $10,625. He appraised the cottage of the plaintiff Thomas R. Winquist at $30,000 and stated the assessment to be $16,275. These cottage values, of course, did not include any land or site value. The Supervisor of the township adopted the true cash values and assessments as determined by Mr. Mackie.

Plaintiffs appealed to the Board of Review and its members refused to do anything about the claimed disputes in values and assessments for the property in the township, saying they understood the Tax Commission had made the valuations and that they could not be changed. (These were the only ones made by the State Tax Commission staff). Appeals were then prosecuted to the State Tax Commission. A hearing was held at the Village of Baldwin, presided over by Commissioner Lee Clark. A transcript of the full stenographic record of the proceedings was arranged for and provided by the plaintiffs.

By agreement the hearing conducted by the State Tax Commission, because of its late date, included both the 1971 and 1972 assessments.

Prior to the hearing Mr. Mackie was requested

to make another appraisal of the NeBoShone property in preparation for the appeal. This appraisal indicated a true cash value for the 1,775 acres of $534,570. This appraisal included a value of $75 per acre for the land, plus $15 a front foot for the river frontage or $382,500 (25,500 feet). This appraisal was made on the entire tract of land of the Association, whereas the previous valuation by Mr. Mackie was made on each of the nine descriptions separately as listed on the assessment rolls.

Also, the Commission had by way of preparation caused appraisals to be made by its staff of some 22 parcels of residential property in Dover Township and some six parcels of agricultural property in the same township.

From these appraisals it was determined by the Commission's staff, as the record establishes, that exclusive of the NeBoShone land and cottages which were assessed at 50% of the value as earlier determined by Mr. Mackie in his appraisal, the remainder of the privately owned property in the township was assessed at an average of 22.85% of value.

The Commission substantially accepted the values established by its staff appraiser Mr. Mackie in his original appraisal, which had been accepted by the township. The Commission also accepted Mr. Mackie's assessment of the cottage of plaintiff Sawyer. It also accepted without change the assessment of the cottage of plaintiff VanderJagt. It reduced the assessment on plaintiff Winquist's cottage from $16,275 to $15,000. As to the land of the plaintiff NeBoShone Association, it increased the true cash value as determined by Mr. Mackie on his original appraisal from $348,950 to $350,770 and the resultant assessment from $174,475 to $175,450.

In light of the uncontradicted evidence as to the ratio of the assessment of other Dover Township properties to their values in 1971, the Commission reduced the ratio of assessment to true cash value of the NeBoShone land to 22.85% of value set for the year 1971. The Commission found that for the year 1972 all assessments in Dover Township were at a ratio of 50% of assessment to value, and for that year re-established plaintiff's assessment in 1971 with an increase of approximately $1,000 from which this appeal has been taken.

The plaintiff raises questions on this appeal as to the legality of the State Tax Commission's determinations of true cash values and assessments of plaintiff's real estate and personalty for the year 1971 and also the year 1972. In our discussions we will first consider the real estate assessments for 1971, next the personalty for 1971, and last the assessments for the year 1972.

### Real Property 1971

Plaintiff sets forth in its grounds for appeal, *viz.:*

"(1) The assessments are in excess of 50% of true cash value and thus are in violation of the applicable statutory and constitutional limitations, and (2) the assessments are discriminatory and non-uniform in that the ratio of assessed value to actual value of this property exceeds the ratio of assessed value to actual value of similar property of other taxpayers, both within the taxing unit, and elsewhere in the county."

The pertinent foundation law controlling the taxation of plaintiff's property in this case is found in Const 1963, art IX, § 3, which reads as follows:

"The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal prop-

erty not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates."

The standard for review is found in Const 1963, art VI, § 28, which states:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

The constitutional mandates were implemented by the General Property Tax Act, 1893 PA 206, as amended. MCLA 211.1 *et seq.;* MSA 7.1 *et seq.* The Act provides for the uniform assessment and taxation of all taxable property, both real and personal other than intangibles, at the standard of not to exceed 50% of true cash value.

It has been ruled that a valuation which was of such proportion as to contradict the judgment of all reasonable men, which shocked their minds, was presumptively fraudulent. *Island Mill Lumber Co v Alpena,* 176 Mich 575, 580; 142 NW 770, 771 (1913).

The courts also recognize that a valuation at odds with all of the evidence of value is constructive fraud or an error of law. *Pantlind Hotel Co v State Tax Commission (On Rehearing),* 381 Mich 717; 167 NW2d 273 (1969), adopting the dissenting

opinion in this case on its original hearing, 380 Mich 390; 157 NW2d 293 (1968).

It is the claim of plaintiff Association that the only competent evidence produced at the hearing before the State Tax Commission was its testimony showing three separate arms-length purchases by the three individual plaintiffs from owners of three shares or certificates in the Association which indicated that the value of a certificate and corresponding one-seventh ownership of the realty was properly valued at $10,000. By such evidence plaintiff asserts that the Commission was required to determine the true cash value of the real estate to be $70,000 or less. It was further claimed that the Pine River is owned and used by the public which prevents the Commission from placing any valuation on the river frontage.

It is true that Pine River has been determined to be a navigable river and thus plaintiff Association, although owning the land to the thread or center of the navigable river, and when owning both sides it owns the entire soil under the water, it does not as such riparian owner own the water or the fish in the water and the state, the general public, who have access to the river without trespassing on the upland of the riparian owner, may fish in the river. Of course, the riparian owner may fish the river and has unlimited access thereto from its own land. *Collins v Gerhardt,* 237 Mich 38; 211 NW 115 (1926). This situation is true as to all navigable rivers in our state, and such fact need not prevent sales of such property for the purposes for which plaintiff has desired to use the property nor does it prevent a purchaser or purchasers from purchasing said property. Evidence of this is the purchase by the three individual plaintiffs of an undivided 3/7ths of said land.

It was agreed that the highest and best use of the property was for a wildlife preserve and for hunting and fishing. This has been the use the land has been put to by the plaintiff.

The Tax Commission through its appraiser Mr. Mackie contested the plaintiff's claim that the Association's bylaws which restrict the sale of an interest in the property to a purchaser or purchasers agreeable to a majority of the owners, should be considered in ascertaining the true cash value and the assessment of the property. This restriction may well be advantageous to the individual stockholders, but it cannot affect the value of the property because if it would, the Association would be able to forbid any sale of the property for 5 or 10 years with the resultant argument that until the expiration of such period of time there is no market value of the property and therefore no possible true cash value and resulting assessment. A private individual could not self-impose a restriction whereby he might be able to avoid or limit paying his just share of the ad valorem taxes due to government, nor can a corporation. In 71 Am Jur 2d, State and Local Taxation, Corporate Property, § 264, p 581, it is stated:

"The property of corporations is subject to taxation the same as that of individuals, and, generally speaking, is taxed under the same principles as govern the taxation of the property of individuals.[55]"

Also see MCLA 211.3; MSA 7.3, and 61 CJ, Taxation, § 833, p 667, which states:

---

"[55] *Philadelphia & R R Co v Pennsylvania,* 15 Wall (US) 284; 21 L Ed 164 (1873); *Inter-Southern L Ins Co v Milliken,* 149 Ky 516; 149 SW 875 (1912); *Treasurer v People's & D Bank,* 47 Ohio St 503; 25 NE 697 (1890)."

"Broadly speaking, property owned by a corporation is to be appraised for taxation in the same way or on the same principles as if it were owned by a natural person, the thing sought in each case being the full cash value of the property in question on the date to which the assessment relates."

We point out that there was other competent evidence introduced at the hearing to show true cash value and a corresponding assessment for the real estate. This evidence was contained in Exhibit No. 9, offered for admission by the plaintiff and accepted by the Tax Commission. It was the detailed valuation and appraisal of the plaintiff's real estate description by description made by appraiser Mackie for the Commission at the request of the township and accepted by the township in assessing the property for the 1971 taxes. (The original appraisal.) Mr. Mackie was a witness and was examined extensively by the plaintiff's counsel at the hearing. There may have been inadequate evidence under the last appraisal made by Mr. Mackie in reference to comparables as used therein and the non-disclosure of realtors and others he discussed the matter of value with and relied upon. This in view of Exhibit No. 2[1] and

[1] "Dear Mr. Kane:

"At the hearing in the above matter we should like to have the following persons available for examination:

"1. Mr. Leonard Leusby, the Dover Township Supervisor;

"2. Mr. Russell J. Mackie, the State Tax Commission Field Examiner;

"3. The Lake County Equalization Director.

"In the field examiner's written reports on the above appeals under the paragraph relative to the persons contacted during the appeal investigations, Mr. Mackie has noted that he talked to 'realtors, property owners, buyers and sellers of property.' If any of such persons have given to Mr. Mackie information which he intends to use as comparables for valuation, we would appreciate being advised of their identities a sufficient time in advance of the hearing so that we will be able to make an independent investigation thereof."

Exhibit No. 3,[2] which we set forth in footnotes. We are unable to reconcile plaintiff's position at trial, that these comparables were not to be considered, with the action of the plaintiff's counsel in examining witness Mackie in detail in regards to these very comparables used by him in ascertaining value and proper assessment in his last appraisal. Had the Commission adopted the last appraisal of Mr. Mackie, and set the assessments thereunder we might be constrained through fairness to remand for further proceedings requiring a full disclosure by Mr. Mackie of any hearsay or expert realtors' opinion he relied on in ascertaining the value. The Commission did increase the true cash value of plaintiff's land over the original Mackie appraisal by $1,820 from $348,950 to $350,770, or by less than .6 of 1%. We deem this so unsubstantial as not to warrant a remand for a further hearing. We do, however, deem it worthy of some consideration in assessing costs.

The plaintiff also attacks the qualifications of Mr. Mackie to give competent and admissible value testimony. The transcript shows the following colloquy concerning Mr. Mackie's qualifications:

*"Q. (by Mr. Sawyer, plaintiff's attorney):* State your full name and address please.

---

[2] "Dear Mr. Winquist:

"In response to your letter of recent date, please be informed that Mr. Mackie of the Tax Commission staff will be available for examination at the hearing.

"By statute, the supervisor who receives a copy of the order for the hearing is required to be present.

"I would suggest that you make known to the equalization department director that you would appreciate his presence. The Tax Commission does not have authority to direct that he be in attendance.

"With respect to the second paragraph of your letter and the persons to whom Mr. Mackie consulted, please be informed that the record does not show that any of the persons with whom he discussed these matters afforded him any of the valuation comparables which were the basis for his report."

"*A.* Russell J. Mackie, 319 North Lavina, Ludington.

"*Q.* What is your occupation?

"*A.* Appraisal with the State Tax Commission.

"*Q.* How long have you been with the State Tax Commission?

"*A.* Five years.

"*Q.* How long have you been with them as appraiser?

"*A.* Five years, I came April 24.

"*Q.* Can you give me what your appraisal background is?

"*A.* What do you mean by that?

"*Q.* Training, experience.

"*A.* I started in Lansing, studied there for 2 or 3 weeks, went to the area of Monroe, Washtenaw, Oakland, Macomb, St. Clair Counties and traveled with various members of the staff on-the-job training and transferred to Ludington, let's see, March of 1970 and have been residing in Ludington since.

"*Q.* March of 1970?

"*A.* Yes.

"*Q.* You say you had three weeks of training?

"*A.* No, I remained in the Lansing Office for three weeks and took up my position in Oakland, that area.

"*Q.* Did you have any formal training?

"*A.* Well, on-the-job training we had staff meetings, accounting courses. I took a course at Ann Arbor for Assessing Officers, intermediate appraisal at Westshore College.

"*Q.* How long a course was that?

"*A.* Eleven weeks.

"*Q.* Full time?

"*A.* One night a week.

"*Q.* One night a week for 11 weeks?

"*A.* That's correct, taught by A. Medaeau.

"*Q.* Who?

"*A.* Alten Medaeau.

"*Q.* Yes, continue.

"*A.* Course 1A MAI.

"*Q.* Is that a correspondence course?

"*A.* No, Oakland University and we stayed in the dorm for 2 weeks.

"*Q.* Two weeks?

"*A.* Part of my course.

"*Q.* Two weeks?

"*A.* Yes, 8 hours a day.

"*Q.* Any other formal training? Are you a member of any appraisal society like MAI?

"*A.* No, not designated.

"*Q.* Or ISRA?

"*A.* No.

"*Q.* Or any other?

"*A.* No.

"*Q.* All of these have examination requirements, experience requirements and so forth to be certified?

"*A.* Yes.

"*Q.* Have you ever attempted to qualify for any of them?

"*A.* Well, I'm in the process now.

"*Q.* Process now, to what?

"*A.* To proceed with the techniques in MAI or attempt to, let's put it that way.

"*Q.* You do accounting work full time doing appraisal for the State Tax Commission?

"*A.* That's right."

A witness, to testify as to value, need not qualify as an expert belonging to any recognized association of the fraternity of appraisers; any person who has the testamentary qualification of knowledge of the question about which he attempts to testify may testify as to the value of land. *State Highway Commissioner v Schmidt,* 3 Mich App 415; 142 NW2d 907 (1966). We rule that the testimony of Mr. Mackie as to value was competent and proper to be considered.

Finally the plaintiff asserts error in the Commission's finding of facts claiming they were not supported by the evidence. *Allied Supermarkets, Inc v*

*State Tax Commission,* 381 Mich 693; 167 NW2d 264 (1969); *Fisher-New Center Co v State Tax Commission (On Rehearing),* 381 Mich 713; 167 NW2d 263 (1969); and *Pantlind Hotel Co, supra.* The pertinent findings of fact and what they were based upon are as follows:

"The Commission caused an examination and investigation to be made of taxpayer's property, copy of which was made available to taxpayer, who subsequently was represented at a hearing upon taxpayer's complaint held at Baldwin, Michigan on May 24, 1972, at which hearing testimony, arguments and exhibits were presented in support of taxpayer's contentions.

"After consideration of taxpayer's contentions set forth in the written Appeal No. 714484 thru No. 714492 and from the data presented at the hearing, along with the examination and investigation of the Commission's staff, the following findings of facts result:

"1. Taxpayer's property consists of approximately 1,775.68 acres of land upon which are situated various buildings. The property is divided into nine descriptions, each separately assessed;

"2. Due to the lapse of time since the initiation of the appeal, it is noted that the level of assessment changed in 1972 from that of 1971, therefore, determinations of assessment should be made separately for each year;

"3. The Commission staff's method of valuation consisted of an appraisal based upon a study of comparable sales of properties, which resulted in a current true cash value of $534,570. Comparable sales were adjusted where necessary for differences when compared to the subject property;

"4. Taxable real property in the township of Dover, is assessed at a mathematical average of 22.85% for 1971, which is sustained by an examination of comparable assessments made for this appeal. The level of assessment is 50% of true cash value for 1972.

"After these findings of fact and the consideration of all the information contained therein, it is determined, in the opinion of the Commission, that the property

should be assessed as shown on the attached schedule for 1971 and 1972."

\* \* \*

SCHEDULE

Ne-Bo-Shone Assoc.
Appeal No's. 714484 thru 714492
Dover Twp., Lake County

| Appeal No. | Item No. | 1971 & 1972 Bd. of Review Assessment | True Cash Value | 1971 Ratio | 1972 Ratio | 1971 S.T.C. Determination | 1972 S.T.C. Determination |
|---|---|---|---|---|---|---|---|
| 714488 | D 30 1 to 5, | 43,500 | 98,900 | 22.85% | 50% | 22,600 | 49,500 |
| 714485 | D 32 5 to 11 | 33,150 | 65,000 | " | " | 14,850 | 32,500 |
| 714486 | D 31 1 to 6, 13 to 16 | 13,625 | 32,500 | " | " | 7,450 | 16,250 |
| 714487 | D 29 7, 9 to 12, 15 | 29,700 | 58,000 | " | " | 13,250 | 29,000 |
| 714488 | D 30 1 to 5, 8, 11 to 16 | 43,500 | 98,900 | " | " | 22,600 | 49,500 |
| 714489 | D 19 13 to 16 | 13,300 | 26,600 | " | " | 6,100 | 13,300 |
| 714490 | D 19 9, 12 | 15,500 | 26,000 | " | " | 5,950 | 13,000 |
| 714491 | D 19 10 2 | 850 | 1,770 | " | " | 400 | 900 |
| 714492 | D 19 7 8 2 | 17,600 | 27,500 | " | " | 6,300 | 13,750" |
| | | [Total | $350,770] | | | | |

The Commission did not adopt in whole or in part the last appraisal of Mr. Mackie, who in that appraisal considered only the total acreage as one entity in stating value.

There was sufficient competent evidence to justify the adoption of the true cash value and assessments set by the Commission on plaintiff's land for the year 1971.

### Personal Property 1971

The grounds for appeal by each of the three individual plaintiffs were stated as:

"(1) The assessments are in excess of 50% of true cash value and thus are in violation of the applicable

constitutional limitation; and (2) the assessments are discriminatory and non-uniform in that the ratio of assessed value to actual value of this property exceeds the ratio of assessed value to actual value of similar property of other taxpayers both within the taxing unit and elsewhere in the county."

As to the first ground we point out that in Exhibit No. 9 which was admitted upon motion of plaintiffs, the appraisal by Mr. Mackie of each cottage and the personal property was minutely described, valued and set forth. The at-arms-length purchases by the three individual plaintiffs setting forth the prices paid were duly admitted. We have no reason to doubt that they were considered along with the other evidence. Two of the assessments by the Commission remained the same and one was reduced. We believe that plaintiffs, who were dissatisfied with the appraisal by Mr. Mackie because of his use of a claimed erroneous depreciation schedule in making his assessment, should have presented another appraisal of the personal property showing what they deemed a proper depreciation schedule should be in appraising the personal property. *Fisher-New Center Co, supra.* We find no error in regard to ground 1 herein.

Ground 2 presents a more difficult question. Plaintiffs demonstrated through proper evidence that in all the real estate in the township that had buildings thereon, the buildings were valued and assessed on the basis of 22.85% of true cash value, instead of 50% as required by law. The Tax Commission apparently accepted the county equalization personal property figure for the year 1971 which showed that personal property in Dover Township was assessed at 50.08% of actual cash value. Considering that the same equalization report showed real estate as assessed at 49.31% of

true cash value, which was greatly in error, together with the other valid evidence showing a disparity in the personal property assessments— we rule that the State Tax Commission should have had a survey made by its staff of the personal property other than plaintiffs' personalty to validate or correct the ratio of assessment of all personal property in the township to true cash value, as it did in the case of the real property appeal.

Under these circumstances we conclude that the State Tax Commission was required to proceed under the mandate set forth in the case of *In re Appeal of General Motors Corp, City of Livonia v State Tax Commission,* 376 Mich 373, 377–379; 137 NW2d 161, 164–165 (1965), wherein Mr. Justice ADAMS stated:

"The constitutional mandates were implemented by the general property tax act (1893 PA 206, as amended [CL 1948 and CLS 1961, § 211.1 *et seq.,* as amended by 1963 PA 66, (Stat Ann 1960 Rev and Stat Ann 1963 Cum Supp § 7.1 *et seq.)])*. The act provides for the uniform assessment and taxation of all taxable property, *both real and personal* other than intangibles, at the standard of true cash value (CL 1948, § 211.1, CLS 1961, § 211.24, as amended by 1963 PA 66, § 211.27 [Stat Ann 1960 Rev § 7.1, Stat Ann 1963 Cum Supp § 7.24, Stat Ann 1960 Rev § 7.27]). Section 24 of the act provides:

" 'The supervisor [assessing officer] shall estimate, according to his best information and judgment, the true cash value of every parcel of real property and set the same down opposite such parcel. He shall also estimate the true cash value of all the personal property of each person, and set the same down opposite the name of such person.'

"Thus all taxable property, real and personal, is placed in *one category* to be uniformly assessed and taxed.

\* \* \*

"Equalization procedures attempt to meet the problem, it being the purpose of these procedures to adjust or correct all of the different modes of assessment to achieve uniformity among governmental units within a county and uniformity among all of the counties of the State. See *School District No 9, Pittsfield Township, Washtenaw County v Washtenaw County Board of Supervisors,* 341 Mich 388, 405; 67 NW2d 165, 173 (1954), and *Calumet & Hecla, Inc v Township of Allouez,* 363 Mich 671; 110 NW2d 585 (1961). But apparently equalization never quite succeeds in overcoming the race for advantage.

"With the destruction of the standard of cash value, the standard of uniformity becomes even more imperative, not only from tax unit to tax unit but as to the individual taxpayer within a unit. If there was ever any question as to which should control, the principle of equal treatment regardless of cash value is now recognized as being primary. See *Titus v State Tax Commission,* 374 Mich 476; 132 NW2d 647 (1965); *Buerger v Alleghany County Board of Property Assessment,* 188 Pa Super 561; 149 A2d 466, 469 (1959). As a practical matter, unequal assessments must be reduced to the average level of assessment if the taxpayer is to have a remedy. *In the Matter of Appeals of Kents,* 34 NJ 21, 25; 166 A2d 763, 765 (1961); *Passaic v Botany Mills, Inc,* 72 NJ Super 449, 457; 178 A2d 657, 662 (1962), *cert den* 37 NJ 231; 181 A2d 13 (1962)." (Emphasis in original.)

The follow-up case of *Hoerner-Waldorf Corp v Village of Ontonagon,* 26 Mich App 542; 182 NW2d 759 (1970), reiterates the rule set forth in *In re Appeal of General Motors Corp, supra.* Judge LEVIN (Now Associate Justice of the Supreme Court) wrote in part therein on p 545; 182 NW2d 761:

"It is manifest from the State Tax Commission's findings regarding the range of assessments that the property of many taxpayers in the district was assessed at a lower ratio to value than the 17.22% adopted in fixing the Hoerner-Waldorf assessment. Nevertheless,

Hoerner-Waldorf is entitled to relief only if its property was assessed at a ratio of true cash value greater than the 'average level of assessment' of all property, real and personal, in the taxing district.[4] The issue, thus, is whether 17.22% is in fact, as found by the State Tax Commission, the average level of assessment.

"Nor is it significant that some assessments included in computing the 17.22% ratio, after they are increased for purposes of state equalization, exceed the constitutional standard of 50% of true cash value.[5] A taxpayer is not entitled to a reduction of his taxes because other taxpayers are paying an excessive or illegal tax. Relief may be granted, we repeat, only if he is assessed at a ratio greater than the average level of assessment."

The Tax Commission asserts that this rule was changed by the amendment to MCLA 211.34(1); MSA 7.52(1), which provides in part as follows:

"Notwithstanding any other provision of this act, effective December 31, 1970, the boards of commissioners and the state tax commission shall equalize real and personal property separately by adding to or deducting from the valuation of taxable real property, and by adding to or deducting from the valuation of taxable personal property in any township, city or county, such amounts as will produce a sum which represents the proportion of true cash value established by the legislature. The tax roll and the tax statement shall clearly set forth the latest state equalized valuation for each item or property which shall be determined by using a separate factor for personal property and a separate factor for real property as equalized. Equalized values

[4] *See In re Appeal of General Motors Corporation, City of Livonia v State Tax Commission,* 376 Mich 373, 379, 380; 137 NW2d 161, 165–166 (1965), where the Supreme Court ruled that 'unequal assessments must be reduced to the average level of assessment' of all property, real and personal, in the taxing district. *See, also, Kensington Hills Development Co v Milford Twp & Milford Village,* 10 Mich App 368, 373, 374; 159 NW2d 330, 333 (1968).

[5] Const 1963, art 9, § 3; *In re Appeal of General Motors Corporation, City of Livonia v State Tax Commission,* 376 Mich 373, 379; 137 NW2d 161, 165 (1965). *Cf. Consumers Power Co v City of Muskegon,* 13 Mich App 334; 164 NW2d 398 (1968)."

for both real and personal property shall be equalized uniformly at the same proportion of true cash value in such county. It shall also cause to be entered upon its records the aggregate valuation of the taxable real and personal property of each township or city in its county as determined by it."

Such required separation of real and personal property for equalization purposes did not change the rule set forth in *In re General Motors,* and *Hoerner-Waldorf, supra.* Both the rule and the amendment concerning the equalization of real and personal property separately can be given full effect without interfering with each other. We further point out that the sections of the General Property Tax Act upon which the rule was based have not been amended or changed.

A remand is necessary to perform this required action. We recognize that the new Tax Tribunal Act, MCLA 205.701 *et seq.;* MSA 7.650(1) *et seq.,* transferred jurisdiction over appeals, such as the present case, from the State Tax Commission to the Tax Tribunal. Accordingly, we remand this matter to the Tax Tribunal for further proceedings in accord with this opinion pertaining to the appeal of individual plaintiffs as to their personal property assessments for the year 1971.

### Real and Personal Property 1972

The plaintiffs assert that the findings of the Commission to the effect that all assessed property in the township for 1972 had been properly increased to 50% of true cash value are without any supporting evidence in the record whatever. The record substantiates this claim of plaintiffs. Counsel for the Commission has attempted to supply at least a part of the needed evidence in an affidavit filed with his brief. We are governed by the record

and therefore decline to enlarge it by affidavit. The Commission's findings in order to be valid must be supported by competent evidence in the record. *Fisher-New Center Co, supra.* There is no such supporting evidence in the record. The failure to comply with this requirement of the law necessitates our remanding this aspect of the matter to the new Tax Tribunal for further proceedings in accord with this opinion.

Reversed and remanded, with costs to plaintiffs.